JAMES P. RHODES, Appellant, v. FRANK A. HINDS, Respondent.

*Contract to saw and deliver lumber as directed by the owner — destruction of the lumber after being sawed and before direction given by the owner for its delivery — the mill owner may recover the actual value of his services in sawing and piling the lumber — failure of a secretary or treasurer of a corporation to verify its annual report.*

A lumber company entered into a contract with the proprietor of a saw mill by which the latter agreed to manufacture into lumber the logs which the lumber company should deliver in his mill pond. The mill owner was to saw and pile the lumber in his yard and was to be paid for his services at a specified sum per 1,000 feet. The lumber was to be loaded on the cars by the mill owner when directed by the lumber company and the stipulated prices were to be ascertained by "board measure" for the lumber "cut, piled and loaded" on board cars. The quantities were to be "determined by the actual bills of sale or invoice for lumber sold, or lumber shipped by the first party's order." Sixty per cent of the contract price for the work done was to be paid in monthly installments, and as the lumber company "realizes on said lumber," thirty per cent additional was to be paid. The remaining ten per cent was to be paid within thirty days from the completion of the manufacture and shipment of the whole of the logs.

The mill owner finished manufacturing and piling the lumber in October, 1894, and thereafter shipped, pursuant to the direction of the corporation, about half of the lumber prior to the 16th day of August, 1895, when the remaining half was destroyed by fire without fault on the part of either party. The lumber company had paid in full for all the lumber shipped and sixty per cent of that burned.

*Held,* that the proprietor of the saw mill had no title and no lien and no insurable interest in the lumber stored in his yard, and was prevented from completing his contract because the lumber company, by reason of the fire, was unable to supply him the lumber to ship;

That, consequently, he was entitled to recover the actual value of his services in manufacturing and piling the lumber;

The failure of the secretary or treasurer of a corporation to join with the vice-president in the verification of an annual report of the corporation, and the omission to file such report in the office of the Secretary of State, as is required by the statute, render the directors of the corporation individually liable for its debts.

APPEAL by the plaintiff, James P. Rhodes, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Jefferson on the 26th day of December, 1901, upon the report of a referee dismissing the complaint upon the merits.

On the 24th day of November, 1893, the Star Lake Lumber Company, a corporation, entered into a written agreement with the plaintiff whereby the latter agreed to manufacture into lumber at his mill the logs which the said company cut upon its tract of timber in the vicinity of the mill and delivered in the mill pond of the plaintiff. The plaintiff was to saw and pile the lumber in his yard and was to be paid for the soft wood two dollars twelve and one-half cents per thousand, and three dollars and twenty-five cents for the hard wood. The lumber was to be loaded on the cars by the plaintiff when directed by the company, and the stipulated prices were to be ascertained by " board measure " for the lumber " cut, piled and loaded " on board cars. The quantities were to be " determined by the actual bills of sale or invoice for lumber sold, or lumber shipped by the first party's order." Sixty per centum of the contract price for the work done was to be paid in monthly payments to enable the plaintiff to pay for doing said work, and as the company " realizes on said lumber " thirty per centum additional was to be paid, and the remaining ten per centum within thirty days from the completion of the manufacture and shipment of the whole of the said logs. The plaintiff finished manufacturing and piling the lumber in October, 1894. Prior to the 16th day of August, 1895, there had been shipped by the plaintiff, pursuant to the direction of the company, about 950,000 feet, when the balance, about 900,000 feet, was destroyed by fire without the fault of either party to the agreement. The lumber company had paid in full for all the lumber shipped and sixty per centum of that burned.

*Elon R. Brown,* for the appellant.

*Watson M. Rogers,* for the respondent.

SPRING, J.:

The lumber all the time belonged to the lumber company, and was stored in the plaintiff's yard for its convenience, but the possession was really that of the lumber company, and the shipments were to be at its option and forty per centum of the contract price was to be deferred until after shipment.

The question is whether the plaintiff is entitled to recover for the value of the labor actually expended in manufacturing and

piling the lumber destroyed. It is clear that he has no lien on the lumber for the money unpaid, for it was to be turned over to the lumber company and payment was to await the sales or delivery on board the cars, which is incompatible with the existence of a lien. (*Wiles Laundering Company* v. *Hahlo*, 105 N. Y. 234.)

The crucial test is in this class of cases : Who was in default ? The title to the logs was in the lumber company. The lumber manufactured therefrom was also owned by it. The company furnished the property which was to be enhanced in value by the labor of the plaintiff. If it failed to furnish the logs for any cause it was in default. If there was a like failure as to the lumber the plaintiff could not perform. Without the fault of the plaintiff he is prevented from completing his contract. The fact that it is entire and its completion was to precede payment are not important because the lumber company, upon whom the obligation rested, is unable, by reason of the fire, to supply him the lumber to ship. It is urged that this is a harsh rule, as each party without any claim must lose. But the situation of the parties to the agreement is not alike. The owner may protect himself by insurance. The plaintiff has no title and no lien and hence has no insurable interest. The plaintiff cannot perform because the defendant does not possess the property essential to render performance possible.

The counsel for the respondent invokes the principle that by the terms of the agreement complete performance must be accomplished before appellant may exact the enforcement of his compensation beyond the sixty per centum already paid, and if he expected to be relieved from the stringency of his agreement he should have protected himself against loss from the destruction of the property by fire by appropriate clauses in the contract. The counsel relies upon *Harmony* v. *Bingham* (12 N. Y. 99); *Tompkins* v. *Dudley* (25 id. 272); *Herter* v. *Mullen* (159 id. 28, 43), and kindred cases. In *Tompkins* v. *Dudley* (*supra*) the defendant contracted with the plaintiffs as trustees to erect a schoolhouse for a specified sum, payment in part to be made as the work progressed. Before the building was completed it was burned to the ground, and the plaintiffs were allowed to recover the sums paid to the defendant upon the contract. It will be observed that the builder during the performance of his agreement had the schoolhouse in his possession and

completely under his dominion. He was able to insure his pay by a lien upon the property and to indemnify himself from loss by fire by insurance. In *Harmony* v. *Bingham* (*supra*) the defendants, who were common carriers, agreed by a contract under seal to transport merchandise for the plaintiff from New York city to Independence, Mo., within twenty-six days, for a stipulated freight charge, and a certain deduction was to be had for each day's overrunning of the time. The defendant did not get the goods to their destination within the twenty-six days, but declined to deliver the goods until the full freight was paid, which the plaintiff did under protest, and brought suit upon the covenant for the freight paid, as well as for damages for breach of the agreement, and recovered. The defendants claimed that they were prevented from delivering the goods because a canal along a portion of their route had become impassable by a freshet, although the proof showed the route by New Orleans was known to the defendants to be accessible. The Court of Appeals held that the covenants must control, and that the defendants were not excused from performance by the fact the canal was impassable. In these cases, as well as in others cited by the counsel for the respondent, the well-settled doctrine is reasserted that where a party has assumed a charge or burden he is bound to perform, and inevitable or unforeseen accident is no excuse.

We think the present case is to be distinguished in principle from those cited and others of cognate application. As has been already suggested, the company in this case not only owned the property and had it under its control, but it was to produce it for shipment. To be sure, the plaintiff undertook unqualifiedly to deliver this lumber and to complete his agreement before payment in full became due, but this undertaking must be construed in the light of the fact that it was the lumber of the company, and before plaintiff could perform he must have the lumber to deliver. This principle is reinforced by the fact that the lumber remained piled after it had been sold for about ten days, and during this period the election of the time of delivery was with the company. The condition referred to, limiting necessarily the absolute undertaking of the plaintiff to ship the lumber, must have been within the contemplation of the parties when they made their agreement. (*Stewart* v. *Stone*, 127 N. Y. 500, 507.)

This feature relieves the plaintiff from liability for failure to perform, and may also prevent him from recovering beyond the value of the labor which he put upon the company's property before its destruction. The work he did was in the fulfillment of the agreement, and as he is debarred from full performance by the default of the company, he may recover the actual value of his services in manufacturing and piling the lumber.

The authorities recognize the distinction adverted to. In *Niblo* v. *Binsse* (1 Keyes, 476), which seems to be a leading case, the plaintiff's assignor contracted to do certain plumbing in a house owned by the defendant's testator, to be completed at a given date, and part of the compensation to be paid as the work progressed, a certain sum upon its completion and the balance when it was tested and proved adequate. During the performance of the work the building burned without the fault of either party, and the contractor was permitted to recover for the work performed. The recovery was upheld upon the ground that the owner was in default in not furnishing the building, which was necessary to enable the contractor to carry out his agreement. In the same line are *Whelan* v. *Ansonia Clock Co.* (97 N. Y. 293); *Hayes* v. *Gross* (9 App. Div. 12); *Dexter* v. *Norton* (47 N. Y. 62); *Butterfield* v. *Byron* (153 Mass. 517); *Haynes* v. *Second Baptist Church* (88 Mo. 285; 57 Am. Rep. 413); *Jones* v. *Judd* (4 N. Y. 412). The present case, it seems to us, is much stronger for the plaintiff than any of those enunciating the principle upon which liability attaches, for in each of them the contractor or laborer had a lien for his services or materials on the thing upon which they were wrought or attached.

The doctrine in these cases does not conflict with the rule that one who agrees to perform before receiving compensation must comply with his undertaking, and if he seeks to be protected against inevitable calamity, must so stipulate in his agreement. That provision presupposes the lumber company has at all times done on its part whatever is essential to enable the plaintiff to perform strictly and fully.

An action was commenced by the plaintiff against the Star Lumber Company to recover for the claim contained in the complaint in this action. During its pendency the company became insolvent, a receiver of its property was appointed and the plaintiff

was enjoined from prosecuting the action. Thereupon this action was commenced against the defendant, a director of said company, charging him with personal liability for said indebtedness by reason of the failure of said company to file its annual reports as prescribed by section 30, chapter 688, Laws of 1892, in the years 1895 and 1896 when said statute was in force. It appears that a report in each of the said years was filed in the office of the clerk of the county of Jefferson, which was the proper county, but the same was verified in 1895 by the defendant as vice-president of the said company and in the following year by its president, but the secretary or treasurer of the said company did not join in such verification as the statute required nor was it filed in the office of the Secretary of State in compliance with the statute. These omissions render the defendant individually liable for the debt of the plaintiff. (*Manhattan Co.* v. *Kaldenberg*, 165 N. Y. 1.)

Our conclusion is that the judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

ADAMS, P. J., WILLIAMS, HISCOCK and NASH, JJ., concurred.

Judgment reversed and new trial ordered, with costs to the appellant to abide event, on questions of law only, the facts having been examined and no error found therein.