HEINBERG BROTHERS, A CORPORATION UNDER THE LAWS OF THE STATE OF FLORIDA, *Plaintiff in Error*, v. H. W. THOMPSON, F. C. CHAFFIN, H. L. CREARY AND J. E. CREARY, *Defendants in Error*.

1. In order to relieve the stockholders of a corporation formed under the general laws from personal liability for the corporation debts, the corporation must, after its letters patent issue, have recorded in the office of the clerk of the Circuit Court of the county wherein its principal place of business is located, the letters patent with a certified copy of its charter, and must. after its letters patent issue, file with the Secretary of State, and with said clerk, duplicate affidavits made by its treasurer after the letters patent have issued that ten per cent. of its capital stock has been subscribed and paid, as required by section 2127, Rev. Stats. of 1892. Affidavits made before, though filed after the letters patent have issued will not suffice.

2. The fact that creditors deal with and extend credit to the corporation as such, does not estop them from enforcing the personal liability of the stockholders for failure to file the affidavits required by section 2127, Rev. Stats. of 1892.

This case was decided by Division B.

Writ of error to the Circuit Court for Escambia county.

The facts in the case are stated in the opinion of the court.

*John C. Avery* (with whom was *J. Campbell Avery* on the brief) for plaintiff in error.

*Blount & Blount* for defendants in error.

CARTER, P. J.—This was an action of assumpsit brought by plaintiff in error against defendants in error in the Circuit Court of Escambia county. The defendants demurred to the declaration, and the demurrer was sustained. Plaintiff filed its amendment to the declaration, and the court

sustained a demurrer to that.    Plaintiff not desiring to further amend, final judgment upon the demurrer was entered, from which this writ of error was taken.    The rulings upon demurrer are assigned as error.

From the allegations of the original declaration it appears that on January 20, 1893, the defendants filed in the office of the Secretary of State a proposed charter of a corporation to be known as Creary Mercantile Company with a capital of $40,000, and having published the notice and otherwise complied with the statutes relating to the organization of corporations for profit application was made to the Governor for letters patent which were granted February 16th, 1893, by the terms of which the defendants, their associates and successors were incorporated into a body politic and corporate in deed and in law by and under the name proposed, with authority to exercise the powers and privileges of a corporation, in accordance with the charter and laws of Florida.    Under the provisions of this charter certain officers including that of treasurer were provided for, and certain corporators were named to fill those offices until the first election, J. E. Creary being so named as treasurer.    On the day the letters patent were granted, there was filed with the Secretary of State, an affidavit in the following language:

"State of Florida,       }
County of Santa Rosa.  }

J. E. Creary, treasurer of the Creary Mercantile Company of Milton, Florida, being duly sworn upon his oath says, that more than ten per cent. of the capital stock of the said corporation has been subscribed and paid into the treasury thereof.                    (Signed) J. E. CREARY.
Sworn to and subscribed before me this
14th day of February, A. D. 1893.
(L. S.)      C. J. PERINOT,
      Notary Public in and for
      said State and county."

A duplicate of said affidavit was also filed with the Clerk of the Circuit Court of Santa Rosa county, wherein the principal place of business of the corporation was located, on February 17th, 1893. No other affidavit upon the subject covered by these was ever filed. In 1897, 1898 and 1899, the Creary Mercantile Company became indebted to plaintiff in error upon open account and upon notes and contracts, and the object of the present suit is to recover against the defendants as stockholders the amounts of those debts. There are some slight differences in the allegations of the original and amended declarations, but we do not deem it necessary to set these differences forth at large, as we think both declarations are sufficient to withstand demurrer. The question presented is whether the stockholders of the corporation are liable for the corporation debts under the provisions of section 2127, Revised Statutes of 1892, which, so far as material to this case, are as follows: "No corporation shall transact any business until it has had the letters patent with a certified copy of the charter recorded in the office of the clerk of the Circuit Court of the county wherein the principal place of business is located, and has also filed with the Secretary of State and with the said clerk duplicate affidavits by its treasurer that ten per cent. of its capital stock has been subscribed and paid. If any corporation shall transact any business before complying with those requirements   *   *   *   its stockholders   *   *   *   shall be personally liable for all of the corporation debts as if they were members of a general partnership and not stockholders of a corporation." The statute does not prescribe a penalty or forfeiture for failure to perform duties, but imposes or continues a contract obligation upon stockholders (*Flash v. Conn*, 16 Fla. 429; *Flash v. Conn*, 109 U. S. 371, 3 Sup. Ct. Rep. 263), which may be enforced by creditors of the corporation against the stockholders where the letters patent or affidavits are not filed as required. The fact that the plaintiff dealt with the association as a corporation does not estop it from suing under

this statute, for the statute imposes a liability upon the stockholders in addition to that resting upon the corporation, and it does not substitute the remedy against the stockholders for the remedy against the corporation, nor require an election of remedies as between them. This had been frequently held, and the propriety of so holding is not questioned by defendants in error here. See *Heuer v. Carmichael*, 82 Iowa, 288, 47 N. W. Rep. 1034; *Loverin v. McLaughlin*, 161 Ill. 417, 44 N. E. Rep. 99. If, therefore, the judgment in the present case can be supported it must be upheld, not upon the doctrine of estoppel, but upon the theory that the affidavits filed on February 16th and 17th, 1893, substantially complied with the requirements of the statute and this view is very forcibly presented by counsel for defendant in error in the briefs filed here. Under the laws in force prior to the Revised Statutes of 1892 (sec. 4, p. 288; sec. 39, p. 235, McClellan's Digest, the latter section amended by chap. 3907, p. 147, acts of 1889) the *corporate existence* began with the filing of the articles of incorporation, but the corporation was not "deemed lawfully organized" until 10 per cent. of its capital stock was subscribed and paid.

The statute did not declare in express language the personal liability of the stockholders as a result of the failure to file the charter or to secure the subscription to and payment of ten per cent. of the capital stock.

Analyzing the section of the Revised Statutes above referred to we ascertain that it applies to the corporation after it has obtained its letters patent and it prohibits the transaction of business by such corporation so as to relieve its stockholders from personal liability until it has complied with certain requirements, but no such consequences were expressly declared for failure to comply, under the previous laws. It does not provide that the corporation shall not "exist" or be deemed "lawfully organized" until it complies with the requirements, but it merely prohibits the transac-

tion of business so as to relieve the stockholders of personal liability until compliance.

Corporations are creatures of law. They have no powers except such as are conferred expressly or impliedly. The principal object of incorporating being to relieve the stockholders from personal liability, and to constitute some agents of the others with powers that can not be withdrawn at the will of one or a minority, the legislature has the right to qualify or even continue the personal liability of stockholders, or to exempt them from the corporation debts upon such terms as it may choose, the matter resting entirely in its discretion.

The first safeguard thrown around the exemption from liability by this statute is that which requires the letters patent to be filed in certain public offices. Another requires that affidavits shall also be filed in those offices, showing that a certain percentage of the capital stock has been subscribed and paid. In other States there are statutes of somewhat similar import. One of the New York statutes was construed in *Flash v. Conn, supra,* where the court held the stockholders personally liable as required by the statutes for failure to comply with their requirements. The same was true in *Heuer v. Carmichael, supra,* where the articles of incorporation failed to fix the highest amount of indebtedness to which the corporation might be subjected, and in *Loverin v. McLaughlin, supra,* where the certificate of incorporation had not been recorded. So in *Bolen v. Crosby,* 49 N. Y. 83, it was held under a statute requiring certain reports to be made, to be signed by a majority of the trustees and verified by the oath of the president or secretary that the secretary might prepare the report and verify it, but he could not subscribe to it the names of the trustees so as to relieve them from the statutory liability for failure to make the report. So in *President and Directors of the Manhattan Company v. Kaldenberg,* 165 N. Y. 1, —, N. E. Rep. —, it was held that a report required to be verified by the president and secretary, in order to relieve the direct-

ors from liability was insufficient for that purpose if verified by the president alone. The same principle was held in *Rhodes v. Hinds,* 79 App. Div. 379, where it was also held that the omission to file the report in the office of the Secretary of State, would render the directors liable. So in *Garnett v. Richardson,* 35 Ark. 144, the stockholders were held liable as partners where the articles of association, though filed in the county clerk's office, were not filed with the Secretary of State. So in *Hardman v. Sage,* 124 N. Y. 25, 26 N. E. Rep. 354, where the statute required a certificate signed and sworn to by the president and a majority of the trustees stating the amount of the capital as fixed and paid in, to be filed in order to relieve stockholders from personal liability, it was held that a certificate in proper form, except that it was acknowledged before an officer instead of being sworn to, was insufficient. In *Bigelow v. Gregory,* 73 Ill. 197, stockholders were held liable for failure to publish the articles of association and to file a certificate of organization. In *Heinze v. South Green Bay Land & Dock Company,* 109 Wis. 99, — N. W. Rep. —, stockholders were held liable because of non-compliance with a statutory provision requiring fifty per cent. of the capital stock to be subscribed and twenty per cent. to be actually paid before commencing business. See, also, *Haggerty v. Foster,* 103 Mass. 17, as to the strictness required in complying with such provisions. Also see *Whitney v. Cammann,* 137 N. Y. 342, 33 N. E. Rep. 305, upon the same subject, holding that a report made, but not filed does not comply with the statute, though it was taken by the secretary to be filed.

In the present case an affidavit that ten per cent. of the capital stock of the corporation had been subscribed and paid was filed with the Secretary of State on the day the letters patent issued, and a duplicate of that affidavit was filed in the clerk's office of Santa Rosa county the next day. We may assume that these affidavits were filed by direction of the company. Do they comply with the requirements of

the statute? The statute requires the corporation—not the promoters or proposed incorporators—to file the letters patent, and also affidavits from its treasurer that ten per cent. of its capital stock has been subscribed and paid. The affidavits here filed were made two days before letters patent issued, consequently they speak from that time, and from that alone, as they were not resworn after the corporation actually came into existence. The affidavits were made at a time when there was no corporation, no treasurer of a corporation, no capital stock in a corporation, and no authority to subscribe for or pay in. capital stock. The most that can be said is that the affidavits filed were made and spoke of a time when there were proceedings pending to form a corporation, which when formed would have the affiant as its treasurer, and when the subscribers to the articles of incorporation had paid in to the proposed treasurer more than ten per cent. of the proposed capital stock. This is not what the statute contemplates. A subscription to stock in a proposed corporation does not constitute the subscriber a stockholder in a corporation. See *Brown v. Florida Southern Railway Company,* 19 Fla. 472. A proposed subscriber can not legally pay in imaginary stock in a corporation which does not exist, so as to constitute the money paid the property of the corporation before it begins to exist. The affidavits, though speaking the truth on the day they were sworn, may have been utterly untrue if construed to speak from the day they were filed. The statute is plain and unambiguous in its language in requiring the affidavit of the existing treasurer of an existing corporation, that ten per cent. of its capital stock has been subscribed and paid. These affidavits were sworn to on the 14th of February. They speak as of that date and not as of the 16th—the day the corporation began existence. If Creary who made the affidavits were prosecuted for perjury he could not be convicted, because the affidavit made before the corporation was formed was neither. authorized nor required by the statute. Neither could he be convicted

of perjury upon proof that there had never been in the treasury of the corporation after it came into existence ten per cent. of the capital stock, for the affidavit does not speak as of that date. It speaks as of the date it was sworn to, and even though the company may have ratified it by filing it as contended by defendant in error, the ratification could not operate so as to make the affidavit speak as of a later date than it was really sworn to. The filing of the letters patent and the required affidavits were not intended as mere idle ceremonies, but to subserve a useful purpose. The filing of the letters gives public notice of the powers, privileges and limitations of the corporation, and of the acceptance of the charter. The filing of the affidavits gives public notice that a certain percentage of the capital stock has been subscribed and paid, showing that the corporation has been actually organized in good faith, and that the corporators intend to do business under the charter and not as individuals and that there has been no abandonment of the enterprise as a corporation. It shows also that there has come into the hands of the treasurer a sum of money which constitutes an asset to which creditors may look for payment, and that the balance of the capital stock is a potential thing of value to creditors. These purposes can not be accomplished by substituting for the affidavits required, other affidavits relating to a time anterior to the existence of the corporation, when the whole matter is in a nebulous state, and when no lawful authority exists for issuing stock or receiving payment therefor.

As we understand the argument for defendant in error, it rests upon the doctrine of ratification. It is thought that though the affidavits were made before, they were filed after the corporation began to exist, and that such filing ratified the affidavits and made them effective from the latter date. But such ratification can not have the effect of causing the affidavits to speak as of the latter date, for the doctrine of ratification can not be held to change the real effect of the affidavits and thereby convict the affiant of perjury. Sup-

pose on February 16th, after the letters patent were issued the real treasurer Creary had then made an affidavit stating that on February 14th, before the corporation came into legal exitsence, ten per cent. of its capital stock had been subscribed and paid. Will it be contended that such an affidavit would answer the purpose of the statute? Clearly not, and yet the affidavits in the present case, giving full effect to the doctrine of ratification, are not so strong as the one supposed. Suppose we assume that by filing the affidavits on the 16th and 17th of February, 1893, the corporation and its treasurer thereby impliedly admitted that the funds derived from the ten per cent. payment on stock made to the prospective treasurer before the corporation began to exist came into the possession of the corporation or its treasurer after the company became an actual corporation, and that by filing the affidavits the corporation would be estopped from denying the truth of such implied admission. This will not aid the defendants in error, for two reasons; first, because a mere admission on the part of the corporation or even the affidavit of any officer thereof except the treasurer, does not comply with the statute, and, secondly, because the implied or express admission would not be under the oath of the treasurer as required by the statute. The authorities already cited show clearly that a mere acknowledgment or admission of the proper officer not verified by oath will not comply with the statute, and they also show that an affidavit from any person or officer other than the treasurer will not suffice.

Our corporation laws are very liberal and there is no need for dispensing with the provisions under discussion. These provisions are easy to comply with and constitute the only conditions to the exemption from personal liability of stockholders. They are safeguards against the improper use of our laws relating to incorporation and should be enforced according to their plain and unambiguous meaning. If the present affidavits can be made to answer the purposes of the statute, then similar affidavits speaking of a

time twenty or twenty-five days prior to the issuance of letters patent must be held sufficient. We do not think the statute has been substantially complied with, and therefore the stockholders are not relieved from personal liability.

The judgment of the Circuit Court is reversed, with ·directions to overrule the demurrers, and that such further proceedings be had as may be conformable to law, and consistent with this opinion.

SHACKLEFORD and WHITFIELD, JJ., concur.

TAYLOR, C. J., and HOCKER and COCKRELL, JJ., concur in the opinion.