E. P. RENTZ *et al.*, *Plaintiffs in Error*, v. LIVE OAK BANK, A CORPORATION, *Defendant in Error.*

1. The safer and better practice in preparing bills of exceptions is to follow the directions given in Special Rule 1, found on page 18 of Rules of the Supreme Court, prefixed to 51 Fla., and page X prefixed to 37 South. Rep.

2. When a verdict is returned into court which is defective or informal, the better practice is for the trial court to refuse to receive it and to require a verdict in proper form to be prepared and assented to by the jury before receiving and entering the same.

3. All fair intendments consistent with the record should be indulged in favor of a verdict that is responsive to the issues made by the pleadings.

4. Where a verdict requires nothing more to be done to make it definite and certain than the computation of the interest upon a given amount, a mere clerical act, such verdict expresses the conclusion of the jury with sufficient certainty to justify a judgment thereon.

5. A question of a preliminary nature which does not necessarily call for illegal or inadmissible testimony is not subject to grounds of objection.

6. The proper way of removing improper testimony from the consideration of the jury is a motion to strike it out.

7.  No evidence is admissible in an action which does not correspond with the allegations in the pleadings and tend to prove the issues.

8.  In an action *ex contractu* brought against several defendants jointly, there can be no recovery unless the evidence adduced establishes the joint liability of all the defendants.

This case was decided by Division A.

Writ of error to the Circuit Court for Suwannee County.

The facts in the case are stated in the opinion of the court.

*H. M. Hampton,* for Plaintiffs in Error;

*Carter & McCollum* and *Rees & Rees,* for Defendant in Error.

SHACKLEFORD, J.—The defendant in error, Live Oak Bank, brought an action at law against "E. P. Rentz, J C. Little, C. B. Stillwell, C. J. McGehee, William LeFils, Rentz-Little & Co., a corporation under the laws of the State of Florida, as surviving partners of the late firm of E. P. Rentz, J. C. Little, C. B. Stillwell, C. J. McGehee, William LeFils, Rentz-Little & Co., & E. S. Rawls, late partners trading and doing business under the style and firm name of Consolidated Lumber Company." The declaration contains four counts, but, as no point is made on the pleadings, it is unnecessary to set out such counts. It is sufficient to say that the action is based upon two promissory notes, each for the sum of $1,250.00 dated the 29th day of July, 1908, payable to the order of Bradford

Lumber Co., respectively forty-five and sixty days after the date thereof, which notes are alleged to have been endorsed and delivered before maturity by the Bradford Lumber Co., to the Live Oak Bank, the defendant in error. A default judgment was entered against the defendant C. J. McGehee. The defendants, E. P. Rentz and J. C. Little, filed six pleas, "one denying the execution of the notes sued on, the others denying in different ways that defendants were at any time partners in the Consolidated Lumber Company, or jointly liable on the notes sued on, and also denying that defendants were surviving partners of the Consolidated Lumber Company," according to the statement in the brief of the plaintiffs in error. Issue was joined upon all of these pleas. The defendant C. B. Stillwell, filed three pleas, which are as follows:

"Comes now the defendant C. B. Stillwell, and for plea to the plaintiff's declaration, says:

1. That the notes sued on herein are not the notes of the Consolidated Lumber Company, as alleged in the declaration.

2. That it is not true as alleged in the plaintiff's declaration; that the Consolidated Lumber Company made, executed and delivered the notes sued on herein.

3. That it is not true as alleged, that the Consolidated Lumber Company, a copartnership composed of E. P. Rentz, J. C. Little, C. B. Stillwell, C. J. McGehee, William LeFils and E. S. Rawls, made, executed and delivered to the Bradford Lumber Company the notes herein sued on."

Issue was also joined upon these pleas. It would seem that Rentz-Little Company had filed a plea denying that they were a corporation, as the record recites that "plaintiff admitting plea of Rentz, Little Company not being a corporation, by agreement Rentz, Little Company was stricken from the record." What plea, if any, the defend-

ant, William LeFils, filed we are not informed, but it is recited in the transcript of the record that, "at the close of the testimony in chief of the plaintiff, upon motion, the cause was discontinued as to William LeFils, and thereupon was dismissed as to" him. The cause was submitted' for trial to a jury upon the issues made by the pleadings and the following verdict was rendered: "We the jury find for the plaintiff the sum of two notes of $1250.00 each, and 8% interest from time of maturity. So say we all. H. J. Mays, Foreman." Upon this verdict the following judgment was rendered and entered:

"Live Oak Bank,
    vs.   |Assumpsit Damages $4000.00.
Consolidated Lumber Co.|

This cause having been heretofore tried by a jury and a verdict found in favor of the plaintiff and against the defendants, E. P. Rentz, J. C. Little, C. B. Stillwell and C. J. McGehee for the sum of two notes of $1250.00 each, and 8% interest from the time of maturity thereof, and a default judgment having been taken and entered against the defendant C. J. McGehee on the 6th day of June, 1910, for want of appearance, plea or demurrer.

Whereupon attorneys for E. P. Rentz, J. C. Little, and C. B. Stillwell having made and submitted a motion in arrest of judgment which said motion was argued by counsel, and considered by the court, and upon consideration thereof the same was overruled; to which ruling attorneys for said defendants then and there accepted and exceptions duly noted.

Whereupon attorneys for said defendants made a motion for judgment non obstante veredicto; which said motion was argued by counsel, and considered by the court, and upon consideration thereof the same was over-

ruled; to which ruling attorneys for said defendants then and there excepted and exceptions duly noted.

Whereupon attorneys for said defendants made and submitted a motion for a new trial herein which said motion was argued by counsel and considered by the court, and upon consideration thereof the same was overruled; to which ruling attorneys for said defendants then and there excepted and exceptions duly noted.

Now in consideration thereof it is thereupon considered, ordered and adjudged by the court that the plaintiff, Live Oak Bank, a corporation organized and existing under the laws of the State of Florida, do have and recover of and from the defendants, E. P. Rentz, J. C. Little, C. B. Stillwell and C. J. McGehee, as surviving partners of the late firm of Consolidated Lumber Company, composed of E. P. Rentz, J. C. Little, C. B. Stillwell, C. J. McGehee and E. S. Rawls, the sum of Twenty-Five Hundred ($2500.00) Dollars as principal of said notes and the further sum of Four Hundred Thirty Three Dollars and Five Cents, as interest, together with the further sum of Twelve & 30/100 Dollars, as its costs in this behalf expended, for which execution may issue.

The defendants in mercy ect."

This judgment is brought here for review by the defendants, who have, assigned seventeen errors, some of which are expressly and others are impliedly abandoned. We shall treat such of them as we think merit it and that we deem necessary for a proper disposition of the case. Before taking up for consideration any of the assignments we wish to call attention to the manner in which the bill of exceptions is prepared. There is incorporated therein the certificate of the trial judge to the effect that such bill of exceptions contains all the evidence introduced at the trial, in compliance with the requirements of Special

Rule 1, found on page 18 of Rules of the Supreme Court, prefixed to 51 Fla., and page X prefixed to 37 South. Rep. In the prefatory or introductory portion of such bill is set forth certain questions propounded to certain witnesses, with the objections interposed thereto, the rulings of the court thereon and the exceptions noted to such rulings. The like course is also pursued with reference to certain proffered documentary evidence, all of which proceedings cover nearly twenty typewritten pages of the transcript. Then follows the testimony of the respective witnesses in narrative form, in accordance with the provisions of Special Rules, to which we referred above, and some of the documentary evidence is again set forth. The objection to this course is that we find it difficult, if not in some instances impossible, to tell at what stage of the trial or under what circumstances the testimony so objected to and admitted was proffered, although in passing upon ·the correctness of some of the rulings of the trial court, upon which assignments are based, it is important that this should be made to appear. We do not know why this course was pursued. Possibly by reason of the fact that at one time the Rules of this court provided for the making up of two bills of exceptions, one of which was designated as the "Evidentiary Bill of Exceptions." This provision is no longer in force, and we would suggest that the safer and better practice in preparing bills of exceptions is to follow the directions and form given in such Special Rule 1, to which we have referred.

The first assignment is that "the court erred in overruling defendants' motion in arrest of judgment." Such motion consists of five grounds, all of which attack the validity of the verdict, but we do not deem it necessary to set out such grounds. It would have been better if the verdict had been more carefully prepared and it would

have been well if the trial court had required a verdict in proper form to be prepared and assented to by the jury before receiving and entering the same. See Covington v. Clemmons, 61 Fla. 151, 55 South. Rep. 81. Even so, as the verdict stands, it is sufficient both in form and substance to withstand the attack made upon it, therefore the motion in arrest of judgment was properly overruled. As we held in Edwards v. State, 54 Fla. 40, 45 South. Rep. 21, "all fair intendments consistent with the record should be indulged in favor of the verdict that is responsive to the issues made by the pleadings." To the same effect is O'Neal v. State, 54 Fla. 96, 44 South. Rep. 940. Two promissory notes constituted the cause of action, each for the sum of $1250.00, dated the 29th day of July, 1908, and due respectively forty-five and sixty days after date. As nothing is said therein concerning interest, such notes necessarily bear interest from their maturity at the legal rate of eight per cent. per annum. Nothing remained to be done but the computation of the interest, purely a clerical act. Schultz v. Pacific Ins. Co., 14 Fla. 73, is squarely in point. See also 29 Amer. & Eng. Ency. of Law (2nd Ed.) 1016 to 1019, and authorities cited in notes, and 22 Ency. of Pl. & Pr. 915.

The second assignment is as follows:

"2. The court erred in permitting the witness C. J. McGehee, to give the following answer to-wit:

'The first organization of the Consolidated Lumber Company was supposed to be composed of the interests of the McGehee Lumber Company, represented by myself, and E. P. Rentz Lumber Company, represented by Mr. Rentz, and Rentz, Little & Company represented by Mr. Rawls,' which answer was made to the following question:

'Do you know who were interested in that business as

a member of that business at the time it began its operations and subsequent thereto?' said answer being given over the objection of the defendants."

The prefatory or introductory portion of the bill of exceptions discloses the following proceedings:

"On the 18th day of November, 1910, during the term of said court, the issue joined between the said parties came on to be tried before a jury, and thereupon the plaintiff produced as a witness C. J. McGehee, and propounded to him the following questions:

'Do you know who were interested in that business as member of that concern (referring to Consolidated Lumber Company) at the time it began its operations and subsequent thereto?'

To which question the witness replied, 'Why, I do not exactly; the Consolidated Lumber Company was intended to be composed of, —'

And thereupon counsel for the defendants stopped the witness, and objected to the said testimony upon the following grounds, to-wit:

Because the intention to compose such company would not make a co-partnership.

But the said judge overruled said objection, and permitted said witness to continue with his said answer, which said answer as continued is as follows:

'The first organization of the Consolidated Lumber Company was supposed to be composed of the interest of the McGehee Lumber Company, represented by myself, and E. P. Rentz Lumber Company represented by Mr. Rentz, and Rentz, Little & Company, represented by Mr. Stillwell, and Bradford Lumber Company, represented by Mr. Rawls.'

To which ruling the defendants then and there excepted."

It will be observed that the question propounded to the witness was in the nature of a preliminary question, consequently was not subject to the grounds of objection, as it did not necessarily call for illegal or inadmissible testimony. Ortiz v. State, 30 Fla. 256, 11 South. Rep. 611; Dickens v. State, 50 Fla. 17, 38 South. Rep. 909; Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, text 444, 43 South. Rep. 318, text 331; Golden v. State, 54 Fla. 43, 44 South. Rep. 948; East Coast Lumber Co. v. Ellis-Young Co., 55 Fla. 256, 45 South. Rep. 826; Gainesville & Gulf R. R. Co. v. Peck, 55 Fla. 402, 46 South. Rep. 1019. After the witness had answered the question propounded to him he proceeded to state what persons the Consolidated Lumber Company was intended to be composed of, when the defendants objected to the witness so testifying upon the ground which we have copied above. It may be that no error was committed in overruling the objection at the time that it was interposed and upon the sole ground urged. If it be true that, after the witness had finished his reply to the question, such answer contained improper testimony, as would seem to be the case, the defendants should have moved the court to strike out such improper portions and to remove the same from the consideration of the jury. See Platt v. Rowan, 54 Fla. 237, 45 South. Rep. 32; Thompson v. State, 55 Fla. 189, 46 South. Rep. 842; Putnal v. State, 56 Fla. 86, 47 South. Rep. 864; McMillan v. Reese, 61 Fla. 360, 55 South. Rep. 388. The defendants did not see fit to pursue the course pointed out in the cited cases, they filed no such motion to strike, but were content to stand on the sole ground of objection interposed and to have their exception noted to the ruling of the court thereon, after the witness had concluded his reply to the question. Upon the showing thus made, we cannot hold the trial court in error in its ruling. See Mc-

Kinnon v. Lewis, 60 Fla. 125, 53 South. Rep. 940. We are compelled to hold that this assignment has not been sustained.

The third, fourth, fifth, sixth, ninth and tenth assignments are likewise based upon the overruling of objections interposed by the defendants to certain questions propounded by the plaintiff to this same witness, C. J. McGehee, who was the first witness introduced on behalf of the plaintiff. We shall not undertake to set out the proceedings or to discuss the respective assignments in detail, since the application of a few well settled principles will indicate sufficiently our views concerning the proper disposition of them, as well as of certain other assignments, which we shall discuss in connection with them. As we have already said, the action was instituted by the plaintiff against certain defendants, whose names we have set out above, "as surviving partners of the late firm of E. P. Rentz, J. C. Little, C. B. Stillwell, C. J. McGehee, William LeFils, Rentz, Little & Co., & E. S. Rawls, late partners trading and doing business under the style and firm name of Consolidated Lumber Company," and such action was based upon two promissory notes alleged to have been executed by the said Consolidated Lumber Company. E. P. Rentz, J. C. Little and C. B. Stillwell filed certain pleas by which they denied their liability upon such notes, and the plaintiff joined issue upon all of the pleas, without filing any special replications. The plaintiff dismissed the action as to the defendants, Rentz, Little & Co., a corporation, and William LeFils, which was an admission upon the part of the plaintiff that such two named defendants were not liable as partners with the other named defendants upon the two notes in question. A default had been entered against the defendant, C. J. McGehee, who was introduced by the plaintiff as

its first witness. During his examination in chief the plaintiff offered in evidence, and the same was admitted over the objections of the defendants, a written instrument purporting to be an application for a charter of the Consolidated Lumber Company and the articles of incorporation signed by E. P. Rentz, C. B. Stillwell, E. S. Rawls, C. J. McGehee and J. C. Little, and acknowledged by all of them except J. C. Little on the 18th day of April, 1908. The admission of this instrument in evidence occasions the seventh assignment. The eighth assignment is based upon the admission in evidence, over the objections of the defendant, of the two notes which constitute the cause of action. The eleventh and twelfth assignments are predicated upon the admission in evidence, over the objections of the defendants, of several other promissory notes, of various dates, executed by the Consolidated Lumber Company and payable to different payees. All of these instruments were offered and admitted in evidence during the examination in chief of the witness McGehee. On the cross-examination of such witness, the defendants sought to prove by him that the Bradford Lumber Company, the payee in the two notes in question, was "a stockholder and a partner interested in the Consolidated Lumber Company," but the trial court sustained the objections of the plaintiff to the question propounded to the witness, and this is made the basis for the thirteenth assignment. The fourteenth and fifteenth assignments are predicated upon the overruling of objections interposed by the defendants to certain questions propounded by the plaintiff to C. D. Blackwell, a witness introduced by the plaintiff and who had testified that he was the cashier of the plaintiff. The sixteenth assignment is based upon the overruling of the motion for a new trial, which, among other grounds, questions the suffici-

ency of the evidence to support the verdict. The seventeenth and only remaining assignment is predicated upon the overruling of the motion of the defendants for a judgment in their favor notwithstanding the verdict.

As we have repeatedly held, no evidence is admissible in an action which does not correspond with the allegations in the pleadings and tend to prove the issues. Malsby v. Gamble, 61 Fla. 310, 54 South. Rep. 766, and prior decisions of this court there cited. This action is brought against the defendants, Rentz, Little, Stillwell and McGehee, jointly as partners trading and doing business together under the style and firm name of Consolidated Lumber Company, and, unless the evidence adduced establishes the joint liability of all of such defendants, there could be no recovery against them. The fact that the evidence may establish the liability of one or more of the defendants is not sufficient; it must establish the liability of all of them. Somers v. Fla. Phosphate Co., 50 Fla. 275; Tomlinson v. Peninsular N. S. Co., decided this term. See 9 Cyc. 755; Gamble v. Kellum, 97 Ala. 677, 12 South. Rep. 82; Cobb v. Keith, 110 Ala. 614, 18 South. Rep. 325; Garrison v. Hawkins Lumber Co., 111 Ala. 308, 20 South. Rep. 427; Smythe v. Dothan Foundry & Machine Co., 166 Ala. 253, 52 South. Rep. 398. As is said in 22 Ency. of Pl. & Pr. 527, "it is a general rule in actions at law that in order to enable a plaintiff to recover or a defendant to succeed in his defense, what is proved or that of which proof is offered by the party on whom lies the *onus probandi* must not vary from what he has previously alleged in his pleading; and this is not a mere arbitrary rule, but is one founded on good sense as well as good law." In other words, the *allegata* and *probata* must meet and correspond. Pinney v. Pinney, 46 Fla. 559, 35 South. Rep. 95, and prior decisions of this court

there cited, and Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318. As to the admissibility of evidence generally to establish a partnership in an action brought against two or more persons as partners, wherein such partnership is denied, see 30 Cyc. 404, and authorities cited in notes. As there said, "The business intimacy between persons, and their conduct in connection with a particular enterprise, may be admissible as tending to prove a partnership between them, although each item of such evidence may have but slight weight when separately considered." It may be that in line with this principle the greater portion of the evidence proffered by the plaintiff, to which the defendants objected, was properly admitted. After a most careful examination of all the evidence introduced at the trial we are of the opinion that it signally fails to establish the joint liability of the defendants. Viewing it in the most favorable light for the plaintiff, it would seem to establish the fact that Rentz, Stillwell, Rawls, McGehee and Little, in the fall of 1907, contemplated the organization of a company and possibly its incorporation, to engage in the retail lumber business in the City of Jacksonville, Florida, for the purpose of handling and utilizing the products from the different mills in which such parties were interested; that several meetings were held at different times, in the winter and spring of 1908, which were attended by these parties, though all of them were not always present, at which the proposed organization was discussed, which discussion resulted in a notice of an application for a charter being prepared, which set forth that application would be made to the Governor "on the —— day of February, 1908, for letters patent incorporating Consolidated Lumber Company," which notice was signed by each of such parties, as was also the pro-

posed charter, with the number of shares subscribed for
by each, which instrument was acknowledged by Rentz,
Stillwell, Rawls and McGehee on the 18th day of April,
1908; that such notice and charter were not used in ap-
plying for letters patent, that the names signed thereto
and the number of shares of stock subscribed for, as well
as the month February, were all stricken out by the wit-
ness, McGehee, for the purpose of preparing another
charter, as Rentz and Little had decided not to go into the
organization; that the incorporation of such company was
not perfected until September 17th, 1908, and that Rentz
and Little did not join the other incorporators; that cer-
tain of the persons named began to carry on the lumber
business under the name of Consolidated Lumber Com-
pany on the first of June 1908, and from time to time ex-
ecuted in the course of such business a number of notes,
among others the two notes upon which this action is
based. All of those matters would seem to be clearly es-
tablished. The plaintiff was proceeding upon the prin-
ciple that the stockholders of a proposed corporation who
execute a promissory note in the name of such corpora-
tion prior to the issuance of the letters patent are liable
as members of a general partnership for the amount of
such note, under the provisions of Section 2652 of the
General Statutes of 1906, and an action may be main-
tained against them as partners. Humphreys v. Drew, 59
Fla. 295, 52 South. Rep. 362. Also see Hienberg Bros. v.
Thompson, 47 Fla. 163, 37 South. Rep. 71. There is no
doubt as to the correctness of this principle, but, most
unfortunately for the plaintiff, the evidence adduced at
the trial does not, in our opinion, bring the instant case
within it. The two notes, each dated the 29th day of
July, 1908, are signed "Consolidated Lumber Co.,
By C. B. Stillwell, Mgr.," and are endorsed "Bradford

Lumber Co., by E. S. Rawls, Pres. C. J. McGehee, E. S. Rawls, C. D. Blackwell." We shall not undertake to set out the evidence in detail or even to summarize the same. It is sufficient to state that E. P. Rentz, J. C. Little and C. B. Stillwell all testify positively that the two former never became stockholders of the Consolidated Lumber Co., but refused to go on with the organization and so notified their associates, which was several months before such company began to transact any business or incurred any indebtedness. The testimony of C. J. McGehee, one of the defendants, who had suffered a default to be entered against him and was the first witness introduced by the plaintiff and the principal witness in its behalf, does not contradict the testimony of Rentz, Little and Stillwell as to such matters upon any material points. He identified the proposed notice of application for letters patent, with the signatures thereto, which were erased, as we have stated, but testified that he had never shown such paper to the plaintiff and that plaintiff had never seen it to his knowledge. C. D. Blackwell, a witness introduced by the plaintiff, testified that he was the cashier of the plaintiff and that he discounted the two notes in question. The witness McGehee had previously testified that Blackwell was also a stockholder and officer of the Bradford Lumber Company, the payee in such notes, as was McGehee, and, as we have seen, both Blackwell and McGehee had endorsed the notes. Blackwell further testified that he had never met Rentz until the day before he testified but that he knew Little at the time he discounted the notes. He also testified to a conversation he had with Little, prior to the discounting of the notes, which is as follows:

"That conversation took place on the streets of Jack-

27 Vol. 61

sonville, and immediately after walking down the streets we met Mr. J. C. Little and spoke to him and shook hands with him, and Mr. Rawls just made the statement—I cannot explain the conversation that I had with Mr. Little without giving the whole thing. Mr. Rawls said to Mr. Little: 'I have been trying to get him to take some stock in the Consolidated Lumber Company,' and I remarked to Mr. Little 'yes, I told Mr. Rawls to go ahead and complete the organization, I might take some stock' I said 'Why don't you gentlemen go ahead and proceed with the organization?' I said 'I have agreed to discount a paper for Mr. Rawls he had given to the Bradford Lumber Company, and as it is you are all liable as partners.' Mr. Little said it ought to be attended to, and did not say he was not a partner or that he was a partner, or that he expected to be a partner, just made mention, 'It ought to be attended to,' as if that was the business way to work the thing up. Note: The court upon motion of counsel for defendants made the following ruling. 'All the testimony concerning Mr. Rawls is stricken out, but the motion is overruled as an entirety but the question affecting Mr. Little is left to you Gentlemen of the Jury.'

The witness continuing said: This completed the conversation with Mr. Little, and we subsequently discounted the notes. The bank had no notice whatever that Mr. Rentz and Mr. Little were not partners in the Consolidated Lumber Company until we started this suit.

On cross examination the witness testified:

In the conversation with Mr. Little he said that it ought to be attended to; this conversation was on the streets of Jacksonville about the time these notes were given, but I do not know the exact date. I do not know where Mr. Little was living at that time. He just said 'it ought to be attended to.' I did not tell him at that time that we

were seeking to hold him a copartner. I told him that I had agreed to discount some of the notes, Bradford Lumber Company notes of the Consolidated Lumber Company, and just threw in the remark that as it stood they were all personally responsible as a partnership, saying 'Why don't you go on and perfect the organization,' saying that I expected to take some stock if they perfected the charter. I supposed he was a partner and simply mentioned the partnership to him. I never saw Mr. Rentz or Mr. Little around the Consolidated Lumber Company's office, nor did I ever have any transactions at all that were carried on by Rentz and Little but carrying these notes of the Bradford Lumber Company. I did not mention during this conversation with Mr. Little who the partners were. I said sufficient to him that ought to have led him to believe I thought he was a partner. I just remarked, said to Mr. Little 'Why don't you men perfect your organization?' I said 'I have agreed to discount some notes for Mr. Rawls, notes of the Consolidated Lumber Company, and as it is you are all liable as partners, meaning Mr. Little and meaning the balance of the gentlemen that I had been informed were members of the firm. Mr. Little must have known whom I was referring to; he could not but know that he knew I meant him. He did not say they were or were not partners; just said the business ought to be attended to."

Mr. Little positively denies having had any such conversation with Mr. Blackwell, but, conceding that he did and that what he said was sufficient to bind him and make him liable on the notes, which may well be doubted, how could it fasten any liability on Rentz? Blackwell further testified that McGehee and Rawls had informed him who composed the firm of the Consolidated Lumber Company and had mentioned themselves, Rentz, Little and Still-

well, and the witness further testified concerning the notes, "I agreed to handle them, believing that Mr. Rentz and Mr. Little and Mr. Rawls and Mr. McGehee and Mr. Stillwell were partners, or it was partly composed of those gentlemen, believing that they were personally liable." This is not sufficient to fasten liability upon Rentz and Little. See 30 Cyc. 404 and 405, and authorities there cited. We would add that Rawls was shown to have departed this life prior to the institution of the action. We are of the opinion that the evidence fails to support the verdict and that the trial court erred in overruling the motion for a new trial. For this reason the judgment must be reversed.

WHITFIELD, C. J., and COCKRELL, J., concur;

TAYLOR, HOCKER and PARKHILL, J. J., concur in the opinion.