DANIEL CRACOWANER and D. WEBER, *Plaintiffs in Error,* v
CARLTON NATIONAL BANK, *Defendant in Error.*

Division B.

Opinion filed October 28, 1929.

*Henry E. Williams* and *Herman Siegal,* for Plaintiffs in Error;

*S. D. Williams,* for Defendant in Error.

STRUM, J.—This is an action in special assumpsit upon a promissory note under seal alleged to have been executed by the defendants below, Cracowaner and Weber, payable to E. M. Winemiller, or order, and by said payee endorsed and negotiated in due course to the plaintiff below, Carlton National Bank.

The declaration is in the usual form in assumpsit upon a promissory note. It is not susceptible of construction as a declaration either in debt or covenant. The note sued on is in the conventional form, but to the right of the signature of each of the makers appears the word "(Seal)."

The first question presented on this writ of error to a judgment for plaintiff below is whether or not assumpsit will lie upon a promissory note under seal.

At common law, and by the unwritten law merchant, an unconditional written promise to pay money, executed under the seal of the obligor, was known as a "bill single" or "writing obligatory." It was not negotiable; the seal was held to import a conclusive presumption of a valid consideration; and though otherwise identical in form with a promissory note, it was uniformly held to be technically a distinct and different instrument.

Under the common law rules of pleading, unaffected by statute, this distinction was vigorously observed by this Court in the consideration of questions of pleading, proof and variance, so that a declaration in assumpsit upon a promissory note, *eo nomine,* could not be supported by proof of an instrument under seal though otherwise identical with the instrument declared on. The common law rule was that the affixing of the seal destroyed negotiability and constituted the instrument a specialty, an action upon which must sound in covenant or debt because at common law assumpsit could not be maintained upon a contract under seal. Hooker v. Gallagher, 6 Fla. 351;

Comerford v. Cobb, 2 Fla. 418. Such was also the view in other jurisdictions. Pierce v. Lacy, 23 Miss. 193; January v. Goodman, 1 Dallas (Pa.) 208; Magruder v. Belt, 7 App. (D. C.) 303; 311; Davis v. McWhorter (Ala.), 26 So. R. 119; 5 C. J. 1383; 8 C. J. 813; 2 R. C. L. 744, 748; Bigelow on Bills, Notes and Checks, (3rd Ed.) Sec. 65.

The distinctions recognized at common law as specialties, grew out of the fact that such instruments were regarded as different in their essential nature from simple contracts; the rights, both substantive and remedial, and the liabilities arising therefrom were determinable in many respects according to different rules than those applicable to simple contracts. At common law simple contracts were open to defenses against which contracts under seal were immune. The issues in suits upon the two classes of instruments were usually different because of the difference in the essential nature of the instruments. It was, therefore, necessary to strictly observe the common law distinctions as to the forms of action applicable to the two classes of instruments, and in the absence of statutory influence on the rule it would necessarily follow that an action on a promissory note under seal must be brought in convenant or debt.

Sec. 6923, Comp. Gen. Laws 1927, a part of the uniform negotiable instruments act, adopted in this State in 1897, provides:

'A negotiable promissory note within the meaning of this Chapter is an unconditional promise in writing made by one person to another signed by the maker, engaging to pay on demand or at a fixed or determinable future time a sum certain in money to order or to bearer. Where a note is drawn to the maker's own order, it is not complete until endorsed by him.''

Sec. 6766, Comp. Gen Laws 1927, also a part of the uniform negotiable instruments act, provides:

"The validity and negotiable character of an instrument are not affected by the fact that it * * * bears a seal * * *."

Sec. 6788, Comp. Gen Laws 1927, also a part of the uniform negotiable instruments act, provides:

"Absence or failure of consideration is matter of defense as against any person not a holder in due course; and partial failure of consideration is a defense *pro tanto* whether the failure is an ascertained and liquidated amount or otherwise."

Sec. 4663,C. G. L. 1927, which is not a part of the uniform negotiable instruments act, provides that an action on any contract, obligation or liability founded "upon an instrument of writing under seal," shall be commenced within twenty years; an action upon any contract, obligation or liability founded upon an instrument of writing not under seal shall be commenced within five years. For the purpose of determining which of these two periods of limitation was applicable, this court has held, both prior to and since the enactment of the uniform negotiable instruments act, that a promissory note in the usual form but under the seal of the maker as this note is, is an instrument of writing under seal to which the twenty year limitation applies. Comerford v. Cobb, *supra;* Grand Lodge v. State Bank, 79 Fla 471, 84 So. R. 528; Langley v. Owens, 52 Fla. 302, 42 So. R. 457, See also Williams v. Peninsular Gro. Co., 73 Fla. 937, 73 So. R. 517; and Fourth Natl. Bank v. Wilson, 101 So. R. 29, the two latter involving the rule of limitation as to endorsers.

In all respects, however, except that last mentioned, the uniform negotiable instruments act has effaced all practical difference between a sealed promissory note and one unsealed. Both create the same rights and liabilities between the parties. The presence of a seal now has no influence on the substance or effect of the note as such, but is effective only for the purpose of determining the time within which an action may be brought to enforce the rights of the obligee or holder thereof. The latter proposition relates not to the form of the remedy, but to the time within which appropriate remedy is available. The negotiable instruments act expressly provides that the seal shall not affect either the validity or the negotiability of the note. Such a note is open to the defense of want of consideration. The mere addition of a seal no longer works a vital change in the essential nature of the instrument as a promissory note as it formerly did at common law. So far as the essential nature of the note as a promise to pay is concerned, all of the common law distinctions between an unsealed promissory note and a note under seal, or a bill single, are gone. The distinctions in the essential nature of the two instruments were the foundation for the technical common law distinction as to the form of action. The reasons for the rule having been removed by statute, the rule should fall with the reason.

If there be any apparent incongruity in holding that although a note under seal will support an action in assumpsit, yet the twenty year statute of limitation, and not the five year statute, is applicable to the action, such an apparent incongruity is purely superficial and arises from the existence of two unrelated but pertinent statutes, each of which is germane to and has a clear field of operation upon the situation under consideration and must

therefore be given effect. By the negotiable instruments act it is provided, not that the seal shall be disregarded or that the instrument shall be treated as an unsealed instrument, but that the presence of the seal shall not affect the validity or negotiability of the instrument. The seal therefore is not to be entirely ignored, but having been affixed by the voluntary act of the obligor, to which there is no objection in law, it must be observed to the extent and for the purpose contemplated by other applicable statutes. Consequently, under Sec. 4663, *supra*, the seal is effective for the purpose of determining the time within which an action on the note may be commenced.

By virtue, however, of the negotiable instruments act, the seal is without significance when considering the substance and effect of the instrument as a promissory note, the rights and liabilities of the parties thereunder, and consequently the form of action in which those rights and liabilities may be determined, because the common law distinctions resulting from the presence of a seal upon a promissory note, which were the basis for the common law distinction as to the form of action, have been abolished by the negotiable instruments act, and a note under seal is therefore of the same essential nature in the respects just named as an unsealed note, unless, of course, a contrary intention appears from the instrument itself. The essential nature of the instrument sued on, and not the period of limitation that may be applicable, determines the form of action.

Prior to the enactment in Alabama of the uniform negotiable instruments law, the courts of that State scrupulously applied the common law rules with reference to notes under seal, to which reference has hereinabove been made. The Supreme Court of Alabama, in *Ex parte* First Natl. Bank of Ozark, 102 So. R. 371, has recently had occa-

sion to consider the precise question now before us, which it disposed of in the following language in view of the influence of the enactment in that state of the uniform negotiable instruments law:

"So far as the substance and effect of the instrument is concerned, there remains no distinction between a sealed and an unsealed promissory note. The sealed note is no longer a specialty with peculiar incidents, but is in fact a negotiable promissory note, differing in no wise from other promissory notes except as to the limitation of action thereon, which, as to sealed instruments, is extended to ten years. Code 1923, Sec. 8943. But the difference relates merely to the remedy, and can have no influence in determining the nature of the instrument, or its appropriate appellation in pleading. The difference upon which the former rule of variance was founded having been removed, the rule itself becomes a senseless technicality, and its excision a plain judicial duty."

In the prior Alabama case of Long v. Gwin, 80 So. R. 440, the declaration in an action in assumpsit declared upon a common law "bill single." The instrument offered and received in evidence over the objection of the defendant was a promissory note not sealed. The Supreme Court of Alabama, after referring to its former decisions under the common law holding that such a situation would constitute a fatal variance, said:

"This has been changed, and this law of variance abrogated by the negotiable instruments law which declares that 'the validity and negotiable character of an instrument are not affected by the fact that

it bears a seal.' Its designation as a 'bill single' in the complaint was therefore a misnomer, but wholly without legal significance, so far as this case is concerned. To hold that it still works a fatal variance between pleading and proof, in spite of the statutory change referred to, would be an absurd and intolerable technicality.''

See also St. Paul's Church v. Fields, 72 Atl. R. 145. We therefore hold in this case that there was no repugnancy in the declaration which declares in assumpsit upon a promissory note and to which was attached and made a part thereof by reference a copy of the cause of action consisting of a promissory note under seal; nor was there any variance in proof by reason of the mere fact that though the declaration sounded in assumpsit the note offered in evidence was under seal.

The defendants Cracowaner and Weber went to trial on a plea of payment, and a further plea alleging that execution and delivery of the note sued on was obtained by the payee thereof by fraud and misrepresentation.

Immediately preceding the trial, and during the term, these defendants moved for a judgment on the pleas because the plaintiff had failed to file replication. For the same reason the defendants moved to strike the cause from the trial docket.

The record discloses that when said motions were made the trial judge ''demanded if plaintiff's counsel desired to join issue, and then and there plaintiff's counsel replied 'the plaintiff joins issue'.'' Thereupon the motions were overruled.

While the method of joining issue just stated is not model practice, there was no reversible error in the action of the trial court in overruling defendants' motions. The

pleas of these defendants are not pleas of set off, counter claim or recoupment. Nothing more than a mere joinder of issue or similiter was necessary to complete the issue. It is irregular to allow a cause to go to trial in the absence of any reply to, or joinder of issue upon, a plea which requires something more than a mere simileter to put it in issue. Where, however, a plaintiff joins issue upon pleas of the nature here in question the cause may be regarded as at issue. American Tie & Timber Co. v. Washington, 62 Fla. 117, 57 So. R. 201; Flournoy v. Munson Bros., 51 Fla. 198, 41 So. R. 398; Globe Theater v. Watt, 62 Fla. 196, 57 So. R. 201.

The action was originally commenced against Cracowaner and Weber, the makers, and Winemiller who was the payee and an endorser in due course, as joint defendants. The defendants Cracowaner and Weber pleaded jointly. Winemiller filed a several plea in his own behalf. Immediately before the case was called for trial, plaintiff moved for leave to dismiss as to Winemiller, the endorser, which motion was granted, to which the defendants Cracowaner and Weber excepted.

Sec. 6819, C. G. L. 1927, which authorizes the joinder in one action of the maker and certain classes of endorsers of a negotiable instrument, authorizes the joinder with the maker of those who became endorsers ''at or before the execution and delivery of the instrument,'' and those only. The statute does not authorize a joint action against the maker and one who became an endorser in due course after the original delivery of the instrument. Prosser v. Orlando Bank & Trust Co., 111 So. R. 516. This statute does not amend the negotiable instruments law so as to make negotiable instruments joint contracts on the part of the makers and one secondarily liable thereon as an endorser in due course. On the contrary, the contract

of a maker and that of endorser in due course are different and distinct contracts creating a several and not a joint liability. Hough v. State Bank of New Smyrna, 61 Fla. 290, 55 So. R. 462; Williams v. Peninsular Gro. Co., 73 Fla. 937, 75 So. R. 517; Webster v. Barnett, 17 Fla. 272.

In an action *ex contractu* against several defendants *upon a joint liability,* the plaintiff must show a joint liability against all defendants or suffer defeat. Rentz v. Live Oak Bank, 61 Fla. 403, 55 So. R. 856; Hale v. Crowell, 2 Fla. 534; Edgar v. Bacon, 122 So. R. 107, 97 Fla. 679. If the liability of Cracowaner, Weber and Winemiller was in fact joint, the plaintiff could not be allowed, over proper objection, to dismiss as to one of such defendants and proceed to judgment against the other. Jonas v. Burks, 87 Fla. 68; 99 So. R. 252. Since, however, the liability of Winemiller, the endorser in due course, is several and not a joint liability with the makers, there is no objection to allowing a dismissal as to that defendant whose liability was several, and who was originally improperly joined as a defendant. Sec. 4208 C. G. L. 1927; Paul v. Commercial Bank, 69 Fla. 62, 68 So. R. 68; Jonas v. Burks, *supra;* 33 C. J., pages 1111-1125.

Affirmed.

WHITFIELD, P. J., AND BUFORD, J., concur.

TERRELL, C. J., AND ELLIS AND BROWN, J. J., concur in the opinion and judgment.