THE MECHANICS & METALS NATIONAL BANK OF THE CITY OF NEW YORK, A CORPORATION, *Plaintiff in Error, v.* CHARLES J. ANGEL, ET AL., *Defendants in Error.*

Opinion Filed May 12, 1920.

Petition for Rehearing Denied July 29, 1920.

1.  The common-law rules of pleading are in force in this State except as modified by statute or the rules promulgated by the Supreme Court under statutory authority.

2.  At common law where too many defendants are joined, and the misjoinder appears on the face of the declaration, a demurrer is available to the defendants.

A Writ of Error to the Circuit Court for Duval County, Daniel A. Simmons, Judge.

Judgment affirmed.

W. E. Kay, John L. Dogget and V. E. Phelps, for Plaintiff in Error;

C. M. Cooper, Chas. P. & J. J. G. Cooper, Shutts, Smith &Bowen, O. O. McCollum, Cromwell Gibbons, Herbert L. Anderson, Alex. St. Clair-Abrams, Odom & Butler and Paul D. McGarry, for Defendants in Error.

WHITFIELD, J.—An action was brought by the plaintiff in error, National Bank, on a promissory note executed by the Florida Trust Company, the alleged liability of the defendants who were stockholders of the trust company being predicated upon the statute making the stock-holders of a banking company personally liable for the debts of the company as if they were members of a general partnership and not stockholders of a corporation, if the banking company transacts business without authority from the Comptroller, which authority was not obtained by the Trust Company. Judgment on demurrer was rendered for the defendants and the plaintiff took writ of error.

The second amended declaration alleges that five named persons "organized a company under the laws of the State of Florida, under and by the name and style of Florida Trust Company;" that the proposed charter of the Flor-

ida Trust Company as published under the law and as
filed in the office of the Secretary of State under the
statute, "providing among other things, in designating
the business to be conducted by said corporation, that it
should have the power, as expressly provided therein,
'to transact a general banking business,' and should exer-
cise all of the incidental powers necessary to carry on
such banking business, and further provided that said
corporation should have the power to 'establish, carry on
and conduct a savings bank department,' and specified
in detail therein the manner in which such savings bank
business should be conducted, and said proposed char-
acter, as so published, further provided, in specifying the
business which said corporation should conduct, that it
should have the power to loan money, and to buy and
sell all kinds of negotiable and non-negotiable paper, and
further provided that it should have the power to 'receive
money on deposit to be subject to check, or to be repaid
in such manner and on such terms, and with or without
interest, as may be agreed upon by the depositor and
said Trust Company;'" that on March 30, 1910, "Letters
Patent were issued to Florida Trust Company by the
Governor of the State of Florida, which said Letters
Patent and Charter of said Florida Trust Company, in
enumerating the powers of said corporation, and the busi-
ness to be transacted by it, expressly authorized said
company (quoting from said Letters Patent) 'to loan
money upon real estate, chattels, collateral or other per-
sonal property;' also (quoting from said Letters Patent)
'to receive money on deposit to be subject to check, or
to be repaid in such manner and on such terms, and with
or without interest, as may be agreed upon by the de-
positor and said Trust Company;' also (quoting from
said Letters Patent) 'to buy and sell all kinds of Govern-

ment, State, municipal or other bonds, and all kinds of negotiable and non-negotiable paper, stocks, profit-sharing certificates or other investment securities;' and said Letters Patent and Charter further expressly provided that the capital stock of said Florida Trust Company should be paid in (quoting therefrom) 'as provided by law for Banking Companies.'

"That thereupon, after the issuance, as aforesaid, of the Charter and Letters Patent of the Florida Trust Company, said company, acting and purporting to act under its said charter, at its said place of business in the City of Jacksonville, Florida, commenced to carry on the business of banking, and in carrying on said business did received money on deposit to be subject to check, and also advanced and loaned money on promissory notes and other securities, and received money on deposit as a savings bank, and conducted a general savings bank business, and also collected checks, drafts and bills of exchange, and did a general banking business; that while the said Florida Trust Company was carrying on and conducting said banking business and doing said acts of banking, as aforesaid, this plaintiff, a bank duly organized under the banking laws of the United States, and transacting a banking business in the State and City of New York, became the banking correspondent of the said Florida Trust Company, and permitted the said Florida Trust Company to open an account with the plaintiff as a correspondent bank in New York City, and to draw checks against said account, and to treat this plaintiff in all respects as its correspondent in New York City; that while the plaintiff was acting as such correspondent, as aforesaid, and while the said Florida Trust Company was carrying on said banking business, as aforesaid, it became indebted to the plaintiff, and on, to-wit, Novem-

ber 4, 1912, by its negotiable promissory note of that date duly executed the said Florida Trust Company promised to pay to the order of the plaintiff the sum of Twenty-five thousand ($25,000.00) Dollars, thirty days after the date thereof, which said time of payment was thereafter, by agreement between the parties thereto, extended to December 26, 1912; but the said Florida Trust Company did not pay the said note when the same became due and payable on said last mentioned date, and said note is and remains wholly due and unpaid, with the exception of certain partial payments made and applied thereon after maturity, which are more particularly shown in the bill of particulars attached to this declaration marked Plaintiff's Exhibit 'C' and hereby made a part hereof. And plaintiff further alleges that in making said loan and in advancing said money represented by said note, as aforesaid, the plaintiff acted as banking correspondent of said Florida Trust Company, and said loan was in the form of a checking account, open to the said Florida Trust Company in carrying on its said business as aforesaid."

It is further alleged that certain of the named defendants were stockholders of the Florida Trust Company at the time it "began to transact the business of a banking company as herein alleged, without having then and there been authorized by the Comptroller of the State of Florida to begin or engage in the business of a banking company;" and "that at the time the said Florida Trust Company incurred the indebtedness sought to be recovered herein, and at the time said mentioned note sued on herein was executed" certain other named defendants were stockholders of the Florida Trust Company; and that certain named defendants were stockholders of the Florida Trust Company "at some time after said Florida Trust Company began to transact a banking business without be-

ing authorized so to do by said State Comptroller, and between that time and the time of the incurring of the indebtedness sued upon herein, on to-wit, November 4. 1912, but not at either of said times. "And plaintiff further alleges that at the time the said Florida Trust Company commenced to carry on the business of a banking company, as aforesaid, and at the time the said mentioned indebtedness to this plaintiff was incurred, and said note to it was executed, as aforesaid, the said Florida Trust Company was not then, and had not theretofore been, authorized by the Comptroller of the State of Florida to begin or engage in the business of banking, as is required by the laws of the State of Florida in such case made and provided as a condition to the legal transaction of such business, and had not at said times paid in, or caused to be paid in by its incorporators and stockholders 50 per cent. of the capital stock of said corporation, as is required by law in the case of banking companies.

"Whereupon, and by reason of the fact that the said Florida Trust Company commenced and engaged in said banking business, and incurred said indebtedness, as aforesaid, without then and there being authorized by the State Comptroller to begin and conduct the business of banking, the defendants and each of them, as stockholders in said Florida Trust Company as hereinbefore alleged, then and there became and are personally liable for said debt, represented by said note, as if they were members of a general partnership, and became and are personally liable to the plaintiff as copartners for the amount of said debt."

Demurrers to the declaration were filed by the various defendants containing numerous grounds, among them being that "It is not alleged in said Second Amended

Declaration that said Florida Trust Company was a banking company," and the "Second Amended Declaration does not allege that said corporation was incorporated under the provisions of the statutes of the State of Florida for incorporating a banking company," and "From the allegations of the Second Amended Declaration it appears that said Florida Trust Company was not organized as a banking company under the laws of the State of Florida, but as a Trust Company, being a corporation for profit under the general laws of the State for organizing corporations for profit," and "That said Second Amended Declaration does not show or allege as to each of said defendants, respectively, that such defendant was a stockholder of said Florida Trust Company at such time or times as would make such defendant in any event personally liable for said alleged promissory note or indebtedness sued on in said Second Amended Declaration, or any part thereof."

The court entered the following order: "This cause coming on to be heard upon the several demurrers to the second amended declaration, and same having been duly argued and considered, it is ordered that the said demurrers be and are hereby sustained. At the request of counsel for the plaintiff the court assigns the following opinion. A trust company organized before the passage of the statute specifically providing for the incorporation of trust companies was not subject to the same provisions of law as banking companies, and the declaration fails to show that Florida Trust Company was anything other than such a Trust Company. The allegations to the effect that it was authorized to do some things which a banking company was authorized to do cannot here take the place of an allegation that it was authorized and empowered to do all the authorized and imposed bank-

ing acts or that it was a banking company. Those parties defendant who did not own stock at the time the liability was incurred are improperly joined as defendants. Done this May 8th, 1918, Daniel A. Simomns, Judge."

On July 11, 1918, the court adjudged that the plaintiff had not amended and declined to amend its second amended declaration after demurrers thereto were sustained, and final judgment for defendants was rendered.

When the Florida Trust Company was organized there were no special statutory provisions in this State for incrporating trust companies as distinguished from other corporations for profit. Some of the specific enactments as to banking companies were that not less than five persons could form a corporation "for carrying on the business of banking;" that "a copy of the proposed charter must be filed with the Comptroller at the same time that the original is filed in the office of the Secretary of State. Before letters patent shall issue to incorporate a banking company, the name shall be approved by the Comptroler and his approval shall be endorsed on the proposed charter. At least 50 per cent. of the capital stock shall be paid in full before the company shall be authorized to commence business, and the remainder of the capital stock shall be paid in installments of at least 10 per cent. each on the whole amount of the capital as frequently as one installment at the end of each succeeding month from the time it shall be authorized by the Comptroller to begin business, and the payment of each installment shall be certified to the Comptroller under oath by the president or cashier. No banking company shall transact any business except such as is incidental and necessarily preliminary to its organization until it has been authorized by the Comptroller to begin the business of banking, and

if such company begins business in violation of this sec-
tion, its stockholders shall be personally liable for all
its debts as if they were members of a general partnership
and not stockholders of a corporation. Whenever any
banking company notifies the Comptroller that at least
50 per cent. of its capital stock has been duly paid in, and
that it has complied with all the provisions which the
law requires before a banking company can be authorized
to begin business, the Comptroller shall examine into the
condition of such company, ascertain especially the
amount of money paid in on acount of its capital, the
name and place of residence of each of its directors and
the amount of the capital stock of which each is the owner
in good faith, and generally whether such company has
complied with all the provisions of law required to en-
title it to engage in the business of banking, and shall
cause to be made and attested by the oaths of a majority
of the directors and by the president, cashier or treasurer
of the company a statement of all the facts necessary to
enable the Comptroller to determine whether the com-
pany is lawfully entitled to begin the business of bank-
ing.

"If upon a careful examination of the facts so reported
and of any other facts which may come to the knowledge
of the Comptroller, whether by means of a special com-
mission appointed by him for the purpose of inquiring
into the condition of the association or therwise, it ap-
pears that such company is lawfully entitled to begin the
business of banking, the Comptroller shall give to such
company a certificate under his hand and official seal
that it has complied with the provisions required to be
complied with before beginning the business of banking,
and that it is authorized to commence such business; but
the Comptroller may withhold from a company his said

certificate whenever it shall be satisfactorily shown to him by proof that the stockholders have formed the same for any other than the legitimate objects contemplated by the law relative to banking companies."

Even if the allegations of the declaration show that the Florida Trust Company was a banking company, or that it was so engaged in banking business as to in effect make it a banking company within the intent of the statute imposing partnership liability on the stockholders of a banking company when the company transacts business without authority from the Comptroller, the liability would be upon those who were stockholders at the time the indebtedness sued on was incurred. See Carolina Buggy Mfg. Co. v. Williams, 71 Fla. 193, 70 South. Rep. 1006; 20 R. C. L. 985; Humphreys v. Drew, 59 Fla. 295, 52 South. Rep. 362; Heinberg Bros. v. Thompson, 47 Fla. 163, 37 South. Rep. 71. Other defendants are sought to be made jointly liable as partners and the court sustained demurrers to the declaration on the ground that as shown by the declaration the other defendants were improperly joined. See 1 Chitty's Plead. 50; Hough v. State Bank of New Smyrna, 61 Fla. 290, 55 South. Rep. 462; Somers v. Florida Pebble Phosphate Co., 50 Fla. 275, 39 South. Rep. 61; Webster v. Barnett, 17 Fla. 272; 20 R. C. L. 709. The defendants here are not all jointly liable as shown by the declaration and the rules of partnership liability made applicable by Section 2701 General Statutes, 1906, Compiled Laws, 1914. Rentz v. Live Oak Bank, 61 Fla. 403, 55 South. Rep. 856; Hale v. Crowell's Admx., 2 Fla. 534; 20 R. C. L. 985.

The common law rules of pleading are in force in this State except as modified by statute or the rules promulgated by the Supreme Court under statutory authority.

At common law where too many defendants are joined, and the misjoinder appears on the face of the declaration, a demurrer is available to the defendants. See 9 Cyc. 707, Note 43; 15 Ency. Pl. & Pro. 583, Note 1.

In an action *ex contractu* at common law only those who are jointly liable should be made parties defendant; and if too many persons be made defendants, and this appears from the declaration, either of the defendants may demur. 1 Chitty's Plead. p. 51; Shipman's Common Law Plead. p. 139; 15 Ency. Pl. & Pr. 583; 20 Ency. Proc. 986; Cunningham v. Town of Orange, etc., 74 Vt. 115; Wooster v. Northrop, 5 Wis. 245; Webster v. Barnett, 17 Fla. 272, text 278; 30 Cyc. 142; Dicey on Parties to Actions, Rule 116, p. 507. This principle or rule of pleading well established at common law has not been changed by statute or by rule of court in this State.

Section 1372 General Statutes, 1906, affords to the plaintiff a means of eliminating improper parties defendant; and it may be that upon suggestion of defendants the court may, under the statute or independently of it, strike the names of parties who are improperly made defendants in a declaration; but this does not deprive the defendants of their right to demur when a misjoinder of defendants appears on the face of the declaration. Wooster v. Northrup, *supra;* White v. Town of Portland, 67 Conn. 272, text 278, 34 Atl. Rep. 1022. While a misjoinder of defendants may not affect the jurisdiction of the court (Gordon v. Clarke, Sheriff, 10 Fla. 179), a misjoinder of defendants may be taken advantage of by the defendants on demurrer. Hough v. State Bank of New Smyrna, 61 Fla. 290, 55 South. Rep. 462.

Different rules seem to prevail under the codes and practice acts of some of the States. See 30 Cyc. 140;

31 Cyc. 294; 20 Ency. Proc. 988; 15, Ency, Pl. & Pr. 762; 37 Cen. Dig. p. 2566.  As to Equity Cases see, 23 Fla. 346; 53 Fla. 776; 74 Vt. 115; text page 118.

The plaintiff declined to amend the declaration by striking therefrom the defendants who were not liable and the court was justified in rendering judgment for the defendants.

Judgment affirmed.

BROWNE, C. J. AND TAYLOR, ELLIS AND WEST, J. J., concur.