RICHMOND TRUST CO. v. CHARLOTTE COUNTY (two cases). SAME v. CHARLOTTE COUNTY et al. (two cases). SAME v. DE SOTO COUNTY.

(District Court, S. D. Florida. July 2, 1924.)

Nos. 869, 870, 961–963.

1. Counties ⬤➡16(2)—New counties not jointly liable for indebtedness of county of which they formerly constituted part, outstanding at time of division.

Under Const. Fla. art. 8, § 3, making a newly established county liable for "its proportion" of existing liabilities of county of which it formerly constituted a part, the five counties into which the county of De Soto was divided by Acts Fla. 1921, c. 8513, were not jointly liable on De Soto county's bonds outstanding at time of division, even if such indebtedness was a general liability of the county.

2. Parties ⬤➡92(3)—Question of misjoinder properly raised by demurrer.

The question of misjoinder of parties is properly raised by demurrer.

3. Counties ⬤➡16(2)—Bond indebtedness held obligation limited in payment to taxes levied on and collected from lands within drainage district.

Bonds issued for payment of expenses of drainage district, created under Gen. St. Fla. 1906, §§ 950–960, as amended, by De Soto county, under Sp. Acts Fla. 1915, c. 7000, did not constitute a general liability of De Soto county at time of issuance of bonds so that all of the five counties into which De Soto county was divided by Acts Fla. 1921, c. 8513, were liable for their respective proportion of the indebtedness, but constituted merely a limited obligation, limited in payment to taxes levied upon and collected from the lands within the drainage district, in view of section 6 and Const. Fla. art. 8, § 5.

4. Counties ⬤➡182—Recitals in bonds notice to dealer as to requirements of statute under which bonds were issued.

Recitals in bonds issued by county are notice to every one who deals in them of the statute under which they were issued, and dealer must take notice of the statute and its requirements.

5. Statutes ⬤➡238—Granting powers strictly construed.

Statutes conferring grants of powers to municipal bodies will be strictly construed.

6. Counties ⬤➡16(2)—Holder of bonds issued by county could not recover against other county after division of first county.

Holder of bonds issued by De Soto county for expenses of drainage district under Sp. Acts Fla. 1915, c. 7000, making bond indebtedness payable out of taxes collected on land in district, could not, following a division of De Soto county into other counties by Acts Fla. 1921, c. 8513, recover in an action at law thereon against other county in which land of drainage district was situated.

7. Counties ⬤➡188—In action against county on bonds constituting obligation payable out of taxes collected on certain lands, court will limit recovery to money so collected.

In action on bonds issued by county for expenses of drainage district under Sp. Acts Fla. 1915, c. 7000, providing for payment of bonds out of taxes collected on property in the district, the court, in entering judgment, will limit the recovery to taxes raised under assessment on lands in district.

8. Counties ⬤➡188—Holder of bonds payable out of taxes collected on certain lands may sue thereon in action at law.

Holder of bonds issued by a county for payment of expenses of drainage district under Sp. Acts Fla. 1915, c. 7000, providing for payment out of taxes collected on property within drainage district, may sue county on bonds in action at law.

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**9. Counties ⚖══188—Money payable to bondholders can be recovered under common count for money had and received.**

Holder of county's bonds payable only out of taxes collected on property within drainage district can recover under common count for money had and received, if county has in its possession money payable to bondholders.

**10. Courts ⚖══99(2)—Declarations may be held bad on demurrer to plea, though demurrers have been previously overruled.**

On plaintiff's demurrer to defendants' pleas, the court may hold declarations bad on demurrer, though demurrers thereto were previously overruled.

At Law. Actions by the Richmond Trust Company against Charlotte County, against Charlotte County and others, and against De Soto County. Orders in accordance with opinion.

Cooper, Cooper & Osborne and Martin H. Long, all of Jacksonville, Fla., and Knight, Thompson & Turner, of Tampa, Fla., for plaintiff.

E. J. L'Engle, Axtell & Rinehart, and J. W. Shands, all of Jacksonville, Fla., for defendants.

JONES, District Judge. These five cases grow out of the same transaction, and were presented together, and will be so considered by the court.

In the year 1912, under sections 950 to 960, General Statutes of Florida of 1906, as amended, a drainage district was organized in De Soto county, Fla., and designated "the Murdock drainage district." In 1915, by a special act of the Legislature of the state of Florida (chapter 7000 of the Acts of 1915), the organization of this drainage district was validated. This special act of the Legislature also authorized the issuance of bonds in an amount necessary to pay all outstanding indebtedness of the Murdock drainage district and for the excavating and digging of all the canals and ditches in said district. Those portions of chapter 7000 of the Laws of 1915 relative to the issuing of bonds and material at this time are as follows:

"Sec. 6. Be it further enacted, that immediately upon the passage and approval of this act, upon the petition of a majority of the owners, or the owners of a majority of acres of the land assessed and embraced in said Murdock drainage district, the county commissioners may issue bonds, for a period of not longer than thirty years, in such amount as may be necessary to pay off all outstanding indebtedness of said Murdock drainage district, whether evidenced by warrants or not, and to complete the excavating and digging of the canals and ditches provided for in the establishment of said drainage district, and the maintenance thereof; said bonds shall bear interest not to exceed six per cent. per annum, with interest bearing coupons attached thereto, and shall be in denominations of $500.00 or $1,000.00, whichever the board may determine. The board of county commissioners shall, in issuing and selling said bonds, act in substantial conformity with the provisions of the General Statutes of Florida applicable to the issuance and sale of bonds for constructing hard surface highways or public buildings, with the exception that the tax for the payment of interest and to provide a sinking fund for the payment of the bonds shall be assessed and collected only upon the taxable property within the boundary of such special drainage district, and provided further that the bonds shall not be sold for less than ninety cents on the dollar. And provided further that when said bonds are sold said board

⚖══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of county commissioners shall have the power to lower the annual assessment on said land over the longer period that said bonds shall run.

"Sec. 7. Be it further enacted, that when said bonds shall be sold, said county commissioners of De Soto county, Florida, out of the proceeds thereof, shall pay off all the outstanding indebtedness of said Murdock drainage district, whether evidenced by warrants or not, and shall pay for the construction of the balance of the work in said district from time to time as the same shall become due and payable, and if after said work is completed and paid for there remains any balance of the proceeds of the sale of said bonds, the same shall be paid into the treasury of the county of De Soto, to be held and applied to the maintenance of said drainage system.

"Sec. 8. Be it further enacted, that nothing herein contained shall prohibit the board of county commissioners from issuing warrants for carrying on the work of said drainage district as provided for in section 956 of the General Statutes of Florida until said bonds are sold.

"Sec. 9. Be it further enacted, that upon the issuance of said bonds as hereinbefore provided for, the same are hereby validated and declared to be a lien, prior in dignity to all other liens, except state and county taxes upon the lands described in said drainage district, and every step, thing, or action, done or taken, leading up and prior to the issuance of said bonds, is hereby declared legal and valid."

Under the authority granted by this law the county commissioners of De Soto county, Fla., issued bonds in the aggregate sum of $100,000, there being 100 bonds, of the denomination of $1,000 each. These bonds are in the following form:—

"United States of America, State of Florida, County of De Soto.
"Number 16.                                                      $1,000.

#### "Murdock Drainage District Bond.

"Know all men by these presents: The county of De Soto, in the state of Florida, acting through and by the board of county commissioners of said De Soto county, acknowledges itself to owe, and for value received hereby promises to pay to the bearer, the sum of one thousand dollars ($1,000.00) on the 1st day of September, 1921, together with interest thereon at the rate of six per cent. per annum from date hereof, payable semiannually on the 1st day of March and September, in each year, until the payment of the principal sum, as evidenced by the coupons hereto attached. Principal and interest hereof are payable in gold coin of the United States of America, not inferior to the present standard of weight and fineness, at the office of the Richmond Trust & Savings Company, Inc., Richmond, Virginia, on presentation of this bond and the coupons as they respectively become due. This bond is one of a series of one hundred bonds of like date and general tenor, except as to the due date thereof; five thousand dollars of said bonds maturing the 1st day of September, 1918; five thousand dollars maturing on the 1st day of September in each succeeding year up to and including the year 1925; six thousand dollars maturing on the 1st day of September, 1926, and on the 1st day of September in each year hereafter up to and including the year 1935; said bonds being numbered from 1 to 100, both inclusive, for one thousand dollars each, aggregating in amount one hundred thousand dollars ($100,000.00), issued by the county of De Soto, acting by and through the board of county commissioners of said county, pursuant to and under authority of chapter 7000 of the Laws of the State of Florida of 1915, and in pursuance of resolutions of the said board of county commissioners duly adopted, and issued for the purpose of paying all outstanding indebtedness of Murdock drainage district and to complete the excavating and digging of the ditches and canals provided for in the establishment of the said Murdock drainage district and the maintenance thereof.

"In testimony whereof, it is hereby vertified and recited that all acts, conditions and things required to be done precedent to and in the issuance of these bonds and essential to make them valid and legal binding obligations on said county of De Soto in the state of Florida have been properly done and performed in regular and due form as required by law; also that said

bonds are a legal and binding obligation on said county of De Soto, to be paid by the taxes raised under the assessment on the lands described in said Murdock drainage district in the manner required by law, and that the good faith, credit and revenues, and all the taxable real property in said Murdock drainage district are hereby irrevocably pledged to the payment of said bonds, principal and interest.

"In witness whereof, the board of county commissioners of De Soto county, in the state of Florida, has caused this bond to be signed by the chairman of said board and its corporate seal to be hereto affixed, attested by its secretary, and the interest coupons hereto attached to bear the lithographed fac simile signatures of its chairman and secretary as of date the 1st day of September 1915.                                         L. W. Whitehurst,

"Chairman Board of County Commissioners of De Soto County.
"Attest:  A. L. Durrance,
            "Secretary Board of County Commissioners of De Soto County."

These bonds are all dated September 1, 1915, and are similar in every respect, except as to the due date. The entire issue was sold to one J. M. Murdock for $90,000, and Murdock in turn sold them to the Richmond Trust Company, a corporation under the laws of the state of Virginia, plaintiff in these cases, for a valuable consideration and before the maturity of said bonds. Eleven of these bonds, numbered 1 to 11, inclusive, together with the interest accruing thereon, were paid as they matured, and the interest as it matured on the remainder of the bonds was paid as follows: On bonds numbered 12 to 34, inclusive, to September 1, 1920, and on bonds numbered 35 to 100, inclusive, to the 1st day of March, 1920. Default has been made in the payment of all bonds, with the exception of bonds 1 to 11, inclusive, and no interest has been paid on any of the remaining bonds since the dates stated above.

Subsequent to the issuing of these bonds the Legislature of the state of Florida (chapter 8513, Acts of 1921) divided the county of De Soto into five counties as follows: De Soto, Charlotte, Hardee, Highland, and Glades. On December 3, 1921, the Richmond Trust Company filed two suits at law in this court to recover on nine of these bonds, alleged to have been at that time past due and unpaid. One of these suits, numbered 869, was brought against Charlotte county, and alleges that all the lands in the Murdock drainage district are now located in that county. The other, numbered 870, is against all of the five counties named above, which counties comprise all the territory that made up De Soto county at the time these bonds were issued. On May 3, 1923, the Richmond Trust Company filed two additional suits, No. 961 against the five counties 'formerly within the territory of De Soto county, and No. 963 against Charlotte county alone; said suits being based upon bonds which had matured subsequent to the institution of the original suits, No. 869 and No. 870. In addition to these suits the Richmond Trust Company on May 3, 1923, filed a fifth suit, No. 962, against De Soto county, as now constituted, upon all the bonds which had then matured and remained unpaid, which includes all of the bonds declared upon in the other four cases.

To the declarations in the original suits, No. 869 and No. 870, demurrers were interposed and overruled. The defendants then filed pleas, to some of which pleas demurrers, motions for compulsory

amendment, and motions to strike were interposed by the plaintiff. To the declarations filed in cases No. 961, No. 962, and No. 963 demurrers and motions to strike have been interposed to the special counts by the defendants. All five of these cases come on to be heard upon pleadings as stated above.

[1, 2] Taking up first case No. 961, which is against the five counties of De Soto, Charlotte, Hardee, Highland, and Glades, and is similar to case No. 870, against the same defendants, the first question raised by the demurrer to the declaration is whether or not such an action may be maintained against these five counties jointly. This suit is brought upon the theory that all of the counties which composed the territory of De Soto county at the time these bonds were issued are jointly liable therefor. The liability of new counties for existing indebtedness at the time of their creation is fixed by the Constitution of the state of Florida and is as follows:

"The Legislature shall have power to establish new counties, and to change county lines. Every newly established county shall be held liable for its proportion of the then existing liabilities of the county or counties from which it shall be formed, rated upon the basis of the assessed value of the property, both real and personal, subject to taxation within the territory taken from any county or counties. * * *" Section 3, art. 8, Constitution of Florida.

It appears from this provision of the Florida Constitution that each of these new counties would only be liable "for its proportion" of the indebtedness growing out of these bonds, which proportion would be based upon the "assessed value of the property" within each of said new counties. It is quite clear to my mind that under this constitutional provision, even though it should be held that the indebtedness growing out of these bonds was a general liability of De Soto county at the time of the division, these new counties would not be jointly liable. To hold this to be a joint liability might result in the enforced payment by one of these new counties of the entire indebtedness growing out of these bonds, notwithstanding the fact that the Constitution of this state specifically says that such county may only be held "for its proportion" of such indebtedness. This construction of section 3, article 8, of the Constitution of the state of Florida is in conformity with decisions of the Supreme Court of this state. See Coachman v. Hackney, 66 Fla. 274, 63 South. 425, and Pinellas County v. Hillsborough County, 70 Fla. 504, 70 South. 558. I am therefore, constrained to hold that there is no joint liability of these defendants. The question of misjoinder of the parties is properly raised by demurrer. Mechanics', etc., National Bank v. Angel, 79 Fla. 761, 85 South. 675. The demurrer of defendants in case No. 961 should be sustained.

It was admitted by counsel for defendants at the time of the argument before me of these cases, and they so concede in their brief, that these bonds "are valid obligations which are enforceable in this court, if the proceeding for their enforcement was brought in proper form against the proper party." It will therefore not be necessary to consume any time considering the validity of these bonds.

[3] The next question to be considered in connection with case No. 961, which question is also vital in connection with the other cases being considered, is the determination of the nature and extent of the liability incurred under these bonds by De Soto county. If this indebtedness constitutes a general liability against De Soto county as it existed at the time these bonds were issued, there can be no doubt that each of these new counties, as well as De Soto as it at present exists, would be liable "for its proportion" of said indebtedness, but not jointly. If, however, the indebtedness incurred under these bonds is a limited obligation, limited in payment to taxes levied upon and collected from the lands within the Murdock drainage district, I think the counties of Glades, Hardee, and Highland would not be liable in any form of action, joint or several, and the question would then narrow down to the liability of De Soto county, whose board of county commissioners executed and delivered these bonds, and the county of Charlotte, in which county the lands of the Murdock drainage district are alleged to be located.

A board of county commissioners under the Constitution of Florida has no inherent power to issue bonds, and in fact has no power except as "shall be prescribed by law." Article 8, § 5, Constitution of Florida; Hillsborough County v. Henderson, 45 Fla. 356, 33 South. 997; Nassau County v. Downie, 16 Fla. 171; Stephens v. Futch, 73 Fla. 708, 74 South. 805. In order, therefore, to determine the scope of these bonds—that is, whether they create a general liability or a limited liability—we must ascertain just what authority and powers have been granted or "prescribed by law" in conformity with which authority or grant of power the county commissioners of De Soto county acted in issuing these bonds and incurring the liabilities thereby created. It appears from the allegations in the declarations that the board of county commissioners of De Soto county, Fla., issued these bonds "pursuant to and under the authority of chapter 7000 of the Laws of the State of Florida, 1915." We must therefore look to chapter 7000 of the Laws of Florida for 1915 to ascertain just what authority was thereby granted, as the county commissioners are dependent upon and could go no further than the powers granted in this act, unless, of course, it could be claimed that the bonds were not issued under this statute, but under some general power, which question certainly could not be raised as to those counts in the declarations which allege that the bonds were issued "pursuant to and under the authority of chapter 7000 of the Laws of Florida of 1915."

This act provides in section 6, which is set out in full above, for the issuance of these bonds, and provides the manner in which they are to be paid. The act says:

"The board of county commissioners shall, in issuing and selling said bonds, act in substantial conformity with the provisions of the General Statutes of Florida applicable to the issuance and sale of bonds for constructing hard surface highways or public buildings, with the exception that the tax for the payment of interest and to provide a sinking fund for the payment of the bonds shall be assessed and collected only upon the taxable property within the boundary of such special drainage district, and provided further that the bonds shall not be sold for less than ninety cents on the dollar."

[4] Reference to this statute is made in the body of each of these bonds, it being expressly stated that the bond "is issued by the board of county commissioners of said county pursuant to and under the authority of chapter 7000 of the Laws of Florida of 1915." It is also further shown in the body of each of these bonds that they are "to be paid by taxes raised under the assessment of the lands described in said Murdock drainage district in the manner required by law, and that the good faith, credit, and revenues, and all the taxable real property in said Murdock drainage district is hereby irrevocably pledged to the payment of said bonds principal and interest." These recitals in these bonds are notice to every one who deals in them of the statute under which the same were issued and such dealer must take notice of the statute and of its requirements. McClure v. Oxford Tp., 94 U. S. 429, 24 L. Ed. 129.

[5] In construing statutes conferring grants of powers to municipal bodies the rule is that of strict construction. Dillon on Municipal Corporations (4th Ed.) § 91. Under this rule I am unable to place any construction upon chapter 7000 of the Laws of Florida of 1915, conferring authority upon De Soto county to issue these bonds, other than that such authority is limited and requires payment of said bonds, together with interest thereon, to be made from taxes collected upon the lands in said Murdock drainage district, and that said bonds do not create an indebtedness that could be paid from the general revenues of the county. The act (chapter 7000, Laws of 1915) specifically provides:

"That the tax for the payment of interest and to provide a sinking fund for the payment of the bonds shall be assessed and collected *only* upon the taxable property within the boundary of such special drainage district."

The use of the word "only" and the proper construction to be placed thereon makes it clear to my mind that the legislative intent was to restrict the payment of these bonds to taxes derived from the property within the Murdock drainage district. Having reached this conclusion, the demurrer to the special counts in the declaration in case No. 961 should be sustained upon the further theory that the bonds create a limited obligation and impose no liability upon certain of these defendants, and therefore this joint action may not be maintained.

[6] We now come to a consideration of the case against Charlotte county alone, numbered 963. The declaration in this case contains ten counts, the first six of which are based upon nonpayment of certain of these bonds; the other four counts being common counts. To the first six counts of this declaration the defendant interposed a demurrer. The cause of action sued upon in these counts, a copy of which is attached to the declaration, not only does not sustain the allegations contained therein, but shows on its face that it is not an obligation of the defendant in this suit, but is a bond executed by the board of county commissioners of De Soto county, Fla., and is not upon its face in any way an obligation of the defendant. I am of the opinion that the facts alleged in these special counts of this declaration do not

justify a judgment at law against this defendant. As was said by the Supreme Court of·Florida in Columbia County v. King, 13 Fla. 470:

"The relator holds the obligation of that county [Columbia] and has no direct legal claim against the new counties."

So in this case the plaintiff holds the obligation of De Soto county and has no "direct legal claim" against Charlotte county. The demurrer to the first six counts in this declaration should be sustained.

The next case to be considered is No. 962 against De Soto county alone. The declaration in this case contains eleven counts. The first six of these counts are based upon failure to pay certain of these bonds; the seventh count alleges that the defendant has collected from taxable property in the Murdock drainage district $11,700, which it has in its possession, but has failed and refused to apply same on the payment of these bonds and seeks to recover a judgment for said sum. The other four counts are the common counts. To this declaration, or to the first seven counts thereof, the defendant has interposed a demurrer and a motion to strike certain specific allegations in said declaration contained. The bonds sued upon in this case are bonds executed and delivered under seal by this defendant, and upon their face show that this defendant has obligated itself to pay same. Under these facts I am of the opinion that the plaintiff is entitled to maintain a suit at law against this defendant for the purpose of having the rights of the plaintiff against the maker of these bonds adjudicated. By the express terms of these bonds the liability of this defendant, however, is limited to "taxes raised under the assessment on the lands described in said Murdock drainage district in the manner required by law." In view of this limitation plaintiff would not be entitled to a general judgment that would create a lien against property which was never intended to be affected by these bonds. This creates, of course, a complicated situation, and, as was said by the court in Coachman v. Hackney, 66 Fla. 274, 63 South. 425:

"The difficulties in the way of drafting a judgment sufficiently elastic to meet the conditions that may arise, should this litigation be prolonged, suggest a resort to a court of equity, as was done in the case of Virginia v. West Virginia, 206 U. S. 290."

[7, 8] These difficulties are not, however, insurmountable, as there is ample authority for the entering of a judgment limiting the recovery "to taxes raised under the assessment on the lands described in said Murdock drainage district." Cooper v. Livingston, 19 Fla. 684; Higgins v. Driggs, 21 Fla. 103; Jordan v. Cass County, 13 Fed. Cas. 1089; Peck v. Jenness, 7 How. (48 U. S.) 612, 12 L. Ed. 841; Bronson v. Rodes, 7 Wall. (74 U. S.) 229, 19 L. Ed. 141. That the limitations upon the right of the plaintiff to recover on these bonds should appear in the judgment is sustained by the Supreme Court of the United States in the case of United States v. New Orleans, 98 U. S. 381, 25 L. Ed. 225:

"If a limitation existed, it should have been insisted upon when the suits on the bonds were pending, and continued in the judgment. The fact that none is thus continued is conclusive on this application that none existed."

The question of the lack of authority of this defendant at the present time to collect taxes upon land within the Murdock drainage district, as provided in the statute under which these bonds were issued, is not a matter to be considered by this court in this suit at this time. The question before the court is simply the right of plaintiff to sue defendant on these bonds in an action at law. That this right exists I do not think can be controverted.

[9] In accordance with the above-expressed views, and upon consideration of the declaration in connection with defendant's motion to strike and demurrer, I am of the opinion that the motion to strike those specific parts of the declaration quoted in paragraphs 1, 2, 3, 4, 5, and 6 of said motion to strike should be granted, and said motion to strike other parts of the declaration should be denied. The demurrer to the fourth, fifth, sixth, and seventh counts should be sustained. If the defendant has in its possession money payable to the plaintiff, it can be recovered under the common count for "money had and received."

[10] This leaves for consideration the two other suits, numbered 869, against Charlotte county alone, and 870, against Charlotte, De Soto, Hardee, Highland, and Glades counties jointly. These two cases are before me upon demurrer to pleas of the defendant. Having sustained demurrers to the same declarations in the two similar cases, No. 961 and No. 963, I shall visit the demurrers to the pleas back upon the declarations and hold same bad on demurrer, notwithstanding the fact that demurrers to the declarations in these cases have been previously overruled. Johnson v. Pensacola, etc., R. Co., 16 Fla. 623, 26 Am. Rep. 731; Bellas v. Keyser, 17 Fla. 100; Sylvester v. Lichtenstein, 61 Fla. 441, 55 South. 282.

Orders in accordance with this opinion will be entered.